UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MONICA I. LEWIS,

    Plaintiff,

v.                                                                         Case No.: 8:24-cv-1935-TPB-CPT

KYLE KING, et al.,

    Defendants.
_____/

## ORDER DISMISSING CASE

This matter is before the Court on "Defendant's, Bob Gualtieri in his Official Capacity as Sheriff of Pinellas County, Motion to Dismiss Second Amended Complaint," filed on September 3, 2024. (Docs. 6; 13; 18). On September 5, 2024, *pro se* Plaintiff Monica Lewis filed a response in opposition to the motion. (Doc. 9). After review of the motion, response, court file, and record, the Court finds as follows:

## Background

This case arises from a car collision between Plaintiff Monica Lewis and Pinellas County Deputy Sheriff Kyle Edward King that occurred on May 13, 2022. On March 20, 2023, Plaintiff filed a complaint against the Pinellas County Sheriff's Office in the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County, Florida. *See Lewis v. King*, No. 23-003005-CI-19 (Fla. 6th Cir. Ct. 2023). In that case, she alleged that the Sheriff's Office was vicariously liable for a motor vehicle accident in which Plaintiff's vehicle was negligently struck in the rear by a cruiser driven by Deputy King. On September 20, 2023, Plaintiff filed an amended complaint

to sue Sheriff Bob Gualtieri, in his official capacity, naming the Sheriff as vicariously liable in place of the Sheriff's Office.

On June 7, 2024, Plaintiff's counsel moved to withdraw, and on June 13, 2023, Plaintiff filed a motion to represent herself. The state court granted both motions on August 2, 2024. Then, on August 11, 2024, Plaintiff filed a second amended complaint against Sheriff Gualtieri and Deputy King, in both their individual and official capacities. This second amended complaint is remarkably different from Plaintiff's earlier complaints – Plaintiff presents a completely new theory that Deputy King intentionally rammed into her vehicle to purposefully injure her. She asserts claims for deprivation of rights under 42 U.S.C. § 1983 (Count 1), equal protection under § 1983 (Count 2), and assault and battery (Count 3).

Sheriff Gualtieri removed this action based on the new federal claims. He then filed a motion to dismiss the second amended complaint as a shotgun pleading and for failure to state a claim. It does not appear that Deputy King has been served.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four

corners of the complaint.  *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995).  Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff."  *Id*.  (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case."  *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, No. 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

As Plaintiff in this case is proceeding *pro se*, the Court more liberally construes the pleadings.  *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). However, a *pro se* plaintiff must still conform with procedural rules and the Court does not have "license to serve as de facto counsel" on behalf of a *pro se* plaintiff. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

## Analysis

The second amended complaint contains obvious deficiencies – Plaintiff confusingly mixes her official capacity claims and individual capacity claims against both Sheriff Gualtieri and Deputy King in each count, making it difficult to respond to or adjudicate the claims.   Furthermore, although she purports to assert official capacity claims against Sheriff Gualtieri and Deputy King, she comes nowhere close to pleading *Monell*[1]  liability.

In each count, Plaintiff does not plead any facts to support her claims.   The

---

[1] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

claims themselves contain only bare and formulaic recitations of elements and legal jargon. For instance, in her deprivation of rights claim, Plaintiff alleges that "Deputy Sheriff Kyle King under the color of law, deprived the Plaintiff Monica Lewis of rights, privileges and immunities secured to her by the United States Constitution. . . . The result is evidenced by the involved physical injury of Monica Lewis." Her second claim is similarly lacking – "Based on true evidence if the Jury concedes this cause to be an intentional tort, possibly motivated by race, Monica Lewis being an African American. Followed up by a cover up of facts by the Pinellas County Sheriff Office. This action will be a violation of equal protection of the law." She then confusingly cites to state statutes related to punitive damages in connection with this purported § 1983 equal protection claim. Finally, in her third cause of action, Plaintiff does not actually plead the elements of assault or of battery, which she improperly mixes together. Instead, she states, "The jury will decide the merits of this case based on the preponderance of the evidence of shown. If intent is proven, malice will be an obvious and an understood component of this cause."

The second amended complaint clearly constitutes a shotgun pleading and further fails to state any legally recognized claims for relief. Although the Court would typically grant leave to amend, it will not do so here because aside from these clear and obvious defects, Plaintiff's allegations are demonstrably false.

A dashboard camera captured the entire incident, and although Plaintiff failed to attach the video as an exhibit, the Court may consider it here. *See Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276-77 (11th Cir. 2023) (concluding that video footage may be considered on a motion to dismiss under the incorporation-by-reference

doctrine); *Robinson v. City of Huntsville*, No. 21-1399, 2022 WL 3867584, at *3 (11th Cir. 2022) (holding it was appropriate for court to consider body camera footage in deciding motion to dismiss because video was central to the claims and its authenticity was undisputed); *McDowell v. Gonzalez*, 820 F. App'x 989, 992 (11th Cir. 2020) (holding that court properly considered body camera footage attached to the motion to dismiss where the video was central to the complaint and undisputed). In this case, the dashcam footage at issue was referenced in the second amended complaint, the footage depicts events central to Plaintiff's claim, and the footage is undisputed because Plaintiff does not challenge its authenticity.[2]

Here, a frame-by-frame review of the video footage conclusively shows that Deputy King did not intentionally ram his vehicle into Plaintiff's vehicle. Deputy King was stopped at a light, where he remained for around 20 seconds. He then approached an intersection after which Plaintiff's vehicle was stopped behind a bus and other cars. As Deputy King passed the intersection, it is clear from the video that he could not see into Plaintiff's vehicle to determine either her race or her litigation history with the Cincinnati Police Department prior to the collision.[3] It is apparent that he simply did not realize that the bus and cars were stopped in his lane. He did

---

[2] There are no allegations or indications that the video has been doctored in any way, nor any contention that what it depicts differed from what actually occurred. In her response in opposition, Plaintiff does not dispute the authenticity of the video. She asserts that Defendants should file all videos related to the incident, noting that she was in possession of three. She also appears to take issue with the "redaction" of sound from the dashcam video, but she does not challenge the visual depiction. *See Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (relying on video evidence where entire series of events was recorded without sound).

[3] In her second amended complaint, Plaintiff speculates that a prior lawsuit she filed in 2016 against the University of Cincinnati Police Department – which she alleges made national news – could be motive for police retaliation in this case.

not "speed up," contrary to Plaintiff's accusations. When he finally observed the stopped vehicles, Deputy King veered onto the sidewalk and over curbs in an effort to avoid Plaintiff's vehicle, but he glancingly struck the right rear corner of her car before coming to a stop a short distance ahead, just before hitting a McDonalds sign. When Deputy King stopped the vehicle, he exclaimed, "Fuck!"

When a video "obviously contradicts" the plaintiff's version of events, a court must accept the video's depiction instead of the plaintiff's account. *Baker*, 67 F.4th at 1277-78 ("But where a video is clear and obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account . . . and view the facts in the light depicted by the video." (internal citations omitted)); *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) ("Where the video obviously contradicts Plaintiff's version of the facts, we accept the video's depiction instead of Plaintiff's account."); *see also Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (explaining that when an event is captured on video, the court must "view[] the facts in the light depicted by the videotape"); *Mathis v. Adams*, 577 F. App'x 966, 968 (11th Cir. 2014) (explaining that when presented with uncontroverted video evidence, a district court is "required to view the facts in the light depicted by the video even if [the plaintiff's] allegations contradicted its depiction"). "After all, courts are not required to rely on 'visible fiction.'" *Baker*, 67 F.4th at 1278 (quoting *Scott*, 550 U.S. at 380-81).

This collision was clearly an accident. Plaintiff's prior counsel knew this when he filed the complaint and amended complaint, both sounding in negligence. But once Plaintiff decided to represent herself, she decided to proceed on her "intentional

conduct" theory and raise constitutional claims and assault and battery claims. Plaintiff's factually unsupported and conclusory allegations are false as evidenced by the dashcam footage, and no reasonable jury could find any constitutional violations here.  Plaintiff may very well have state law negligence claims based on the car accident.  But the video conclusively establishes that Plaintiff cannot succeed on her § 1983 deprivation of rights and equal protection claims against Sheriff Gualtieri or Deputy King.

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).  This garden variety car accident cannot be made into a federal constitutional case just because Plaintiff is an African American woman who previously sued a police department.  Plaintiff's § 1983 claims in Counts 1 and 2 are therefore dismissed with prejudice.  The Court declines to exercise supplemental jurisdiction over her state law assault and battery claims in Count 3.  This Order does not prevent Plaintiff from suing either Deputy King or Sheriff Gualtieri for negligence in state court based on the car accident.  But she will not be permitted leave to amend her complaint here because, based on the conclusive video evidence, amendment would be futile.[4]  This is a car crash case, not a federal constitutional civil rights case – it's all on the video.

---

[4] In light of this ruling, the Court declines to address Sheriff Gualtieri's other arguments for dismissal, including his immunity arguments.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendant's, Bob Gualtieri in his Official Capacity as Sheriff of Pinellas County, Motion to Dismiss Second Amended Complaint" (Doc. 6) is **GRANTED** to the extent that Counts 1 and 2 are **DISMISSED WITH PREJUDICE**.

2. The Court declines to exercise supplemental jurisdiction over Count 3.

3. This Order does not preclude Plaintiff from pursuing negligence claims based on the car accident against Sheriff Gualtieri or Deputy King in state court.

4. The Clerk of Court is directed to terminate any pending deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, on this 30th day of September, 2024.

TOM BARBER
UNITED STATES DISTRICT JUDGE